IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Barnwell County Hospital,<br><br>Debtor. | Case No.<br>Chapter 9 |

**MEMORANDUM IN SUPPORT OF STATEMENT OF QUALIFICATIONS UNDER 11 U.S.C. § 109(c)**

Barnwell County Hospital (the "Debtor") submits the following Memorandum in Support of its Statement of Qualifications Under 11 U.S.C. § 109(c).[1]

## I.    BACKGROUND

### A. History of the Debtor.

The Debtor has filed a petition seeking relief under chapter 9 of the United States Bankruptcy Code ("Bankruptcy Code"). The Debtor was created in 1953 by act of the South Carolina Legislature to provide hospital facilities to the residents of Barnwell County (the "County"). 1953 S.C. Acts 298.[2] The legislature observed the principal purpose of the Act was to create a hospital for the residents of Barnwell County. *Id.* § 7. The legislature created the Barnwell County Hospital Board (the "Board") and charged it with the responsibility constructing a hospital and making all rules and regulations for the operations and management of the Debtor. *Id.* §§ 1, 2, 3. Thereafter, the General Assembly enacted the Home Rule Act of 1975, which prohibited the General Assembly from passing bills related to a single political subdivision:

---

[1] This Memorandum is further supported by the Declaration of Charles Lowell Jowers, Sr. of the Debtor filed on even date herewith.
[2] A copy of this Act is attached hereto as Exhibit 1.

1

As ratified, new Article VIII directed the General Assembly to implement what was popularly referred to as "home rule" by establishing the structure, organization, powers, duties, functions, and responsibilities of local governments by general law. 3 S.C. Const. art. VIII, §§ 7. In addition, new Article VIII mandated a liberal rule of construction regarding any constitutional provisions or laws concerning local government. S.C. Const. art. VIII, § 17. Although the General Assembly was required to implement home rule, new Article VIII essentially left it up to the General Assembly to decide what powers local governments should have. Acting under this authority, the General Assembly enacted various statutes regarding the powers of counties and municipalities.

*Hospitality Ass'n of South Carolina v. County of Charleston*, 320 S.C. 219, 464 S.E.2d 113 (1995). Before "home rule," counties were governed by bills passed by the General Assembly. After "home rule," the counties were given certain authority to exercise certain powers. For example, S.C. Code Ann. § 4-9-25, which was enacted by the General Assembly in 1989, states in part as follows:

> All counties of the State . . . have authority to enact regulations, resolutions, and ordinances . . . , including the exercise of these powers in relation to health and order in counties or respecting any subject as appears to them necessary and proper for the security, general welfare, and convenience of counties or for preserving health, peace, order, and good government in them.

Accordingly, after "home rule" was enacted, by Ordinance No. 1988-35 adopted September 26, 1988, as amended by Ordinance Nos. 1993-62, 1999-139, and 2003-178, the County declared that the Board should consist of 9 members, and provided the Board with the authority and responsibility to make all rules and regulations for the operation and management of the Debtor. Appointments on the Board are made by Barnwell County Council, with six individual representatives being recommended by County Council members, two representatives being from the Barnwell County Hospital Medical Staff and one member being appointed by direct election of the medical staff. All members of the Board recently resigned, and therefore the Barnwell County Council is currently acting as members of the Board.

Debtor operates as a hospital located in the city of Barnwell, SC on 811 Reynolds Road, Barnwell, South Carolina. Debtor is licensed for 53 beds but currently operates 31 beds with both private and semi-private rooms. The Debtor has 2 general surgical suites and an Endoscopy room with three recovery bays. The Hospital's imaging department offers 2 radiographic rooms and a portable x-ray machine, ultrasound, mammography, 16 slice CT scanner, mobile MRI services on a weekly basis, and a C-arm for surgical and endoscopic procedures. The Debtor also operates a Critical Care Unit with 3 ICU beds and 4 step-down beds, a sleep center with 2 beds, Cardiovascular Services, Behavioral Health, and Rehabilitation Services. The hospital's ER is a 7 bed unit.

The Debtor also owns and operates three provider-based Rural Health Clinics in the southwestern rural area of South Carolina serving the communities of Blackville, Williston, and Wagener. In fiscal year 2009, the Blackville clinic had 5,285 patient visits, the Williston Clinic had 3,261 patient visits, and the Wagener Clinic had 4,027 patient visits. These Rural Health Clinics provide primary health services, basic lab services, emergency care services, after hours coverage and makes arrangements for patient hospital specialty care.

. The Debtor provides general medical and surgical care in inpatient, outpatient, and emergency room service areas. The Debtor has 14 physicians on active medical staff and 13 are Board Certified.

B.    **Financial Issues facing the Debtor.**

The Debtor has been operating at a loss. The net revenue for year-to-date ending July 31, 2011 was $11,795,845. This was $769,750 less than Debtor budgeted. Year-to-date ending July 31, 2011, Debtor has operated at a loss of $1,020,160.

The Debtor has been able to stay in business only because the County has provided

3

funding to the Debtor. The Debtor has been informed by the County that the County does not have the ability or intent to continue funding the operating losses of the Debtor in the future. Even with the County providing supplemental funding, the Debtor has struggled to pay its debts in the ordinary course of business. Accordingly, without the County's funding and based upon its historical operating losses, the Debtor believes it will be unable to pay its bills in the future as they become due.

On October 4, 2011, the Debtor filed its chapter 9 petition at the direction of the Board. In connection with its petition, the Debtor filed its Statement of Qualifications Under 11 U.S.C. § 109(c), whereby it certified that the Debtor satisfied each of the five requirements proscribed in Section 109(c). As is discussed in more detail below, the Debtor is eligible to be a debtor in a chapter 9 case.

## II.    ARGUMENT

### A.    The Barnwell County Hospital is an Eligible Debtor under Chapter 9.

Section 109(c) of the Bankruptcy Code sets forth the statutory criteria for eligibility as a chapter 9 debtor. The debtor must be (1) a municipality; (2) specifically authorized to be a chapter 9 debtor; (3) insolvent; (4) willing to effect a plan to adjust its debts; and (5) must also meet one of the following four requirements: (i) the debtor has obtained the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair through its plan; (ii) the debtor has negotiated in good faith, but failed to obtain the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair under its plan; (iii) the debtor is unable to negotiate with its creditors because such efforts are impracticable; or (iv) the debtor must reasonably believe that a creditor may attempt to obtain a preference. 11 U.S.C. § 109(c).

These requirements are to be construed broadly to provide relief to further the Bankruptcy Code's underlying policies. *See In re Sullivan County Reg'l Refuse Disposal Dist.*, 165 B.R. 60, 73 (Bankr. D.N.H. 1994). The Debtor has the burden to establish its eligibility under Section 109(c). *Hamilton Creek Metro. Dist. v. Bondholders Colo. Bondshares (In re Hamilton Creek Metro. Dist.)*, 143 F.3d 1381, 1385 (10th Cir. 1998); *In re Slocum Lake Drainage Dist. of Lake County*, 336 B.R. 387, 390 (Bankr. N.D. Ill 2006). As is detailed below, the Debtor satisfies each of the requirements of Section 109(c), and therefore is eligible to be a debtor under chapter 9.

1. **The Debtor is a Municipality.**

Section 109(c)(1) requires that the debtor filing a petition under chapter 9 must be a municipality. A "municipality" is defined in section 101 of the Bankruptcy Code to mean "political subdivision or public agency or instrumentality of a State." 11 U.S.C. § 101(40). While the Code does not define the terms "public agency, or instrumentality of a State," a legal test to determine public agency status was established in *Ex parte York County Natural Gas Authority*, 238 F. Supp. 964, 976 (W.D. S.C. 1965), *modified on other grounds,*, 362 F.2d 78 (4th Cir. 1965), *cert. denied*, 383 U.S. 970 (1966), stating "the legal test between a private or public authority or agency is whether the authority or agency is subject to control by public authority, state or municipal." *Id.* (holding a gas authority with the power to issue revenue bonds was a "municipality" for purposes of Chapter 9); *see also In re Connector 2000 Ass'n*, 447 B.R. 752 (Bankr. D.S.C. 2011) (finding South Carolina nonprofit corporation organized as a "public benefit" corporation to operate a toll qualified as municipality using the *York County* public agency test). Using this public agency test in *York County*, the court in *In re Greene County Hospital*, 59 B.R. 388, 389-90 (S.D. Miss. 1986), determined that because the hospital was

5

subject to control by a county board of supervisors, it qualified as a public agency and thus met the statutory requirement for "municipality" status. *See also In re Westport Transit District*, 165 B.R. 93 (Bankr. D. Conn 1994) (relying on public agency test set forth in *York County*, the court found the debtor transit district which provided public transportation services, could issue bonds, and had the power of eminent domain was a "municipality").

In this case, the Debtor is a public agency, and thus a "municipality" as defined in section 101 (40) of the Bankruptcy Code. The Debtor was created by statute in the public interest and is supported in part by public funding through the County providing it funds. Furthermore, vacancies on the Board are appointed and approved by County Council. Applying the public agency test set forth in *York County*, Debtor is a public agency and thus meets the statutory requirement for "municipality" status. *See Greene County Hospital*, 59 B.R. 388, 389-90 (S.D. Miss. 1986) (hospital a "municipality" because the hospital was subject to control by a county board of supervisors); *see also Hospitality Ass'n of South Carolina v. County of Charleston*, 320 S.C. 219, 464 S.E.2d 113 (1995) (finding hospital was a public corporation and instrumentality of the state for purposes of qualifying under § 1983 where the hospital that was created by statute in the public interest, supported in part by public funding, and the board members were approved by County Council); *Sloan v. Greenville Hosp. Sys.*, 388 S.C. 152 (S.C. 2010) (holding the hospital was not a state "governmental body"[3] subject to the procurement procedures detailed in the state's Procurement Code; rather, it was a "political subdivision,"[4] and more particularly a "special purpose district" and by law was required to, establish its own provisions embodying sound principles of appropriately competitive procurement).

---

[3] The Procurement Code defines Governmental Body as "a state government department, commission, council, board, bureau, committee, institution, college, university, technical school, agency, government corporation, or other establishment or official of the executive or judicial branch." S.C. Code Ann. § 11-35-310(18).

[4] The Procurement Code defines Political subdivision" as "all counties, municipalities, school districts, public service or special purpose districts." Id. § 11-35-310(23). Political subdivisions are excluded from the definition of a governmental body and are not subject to the procurement procedures outlined in the Procurement Code.

Accordingly, the Debtor is a public agency or instrumentality of the State of South Carolina and is a municipality within the meaning of Section 109(c)(1).

**2. Debtor is Specifically Authorized Under South Carolina Law to Bring Its Petition.**

Section 109(c)(2) requires that a municipality be "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." 11 U.S.C. § 109(c)(2).

South Carolina has adopted measures which expressly enable municipalities to file bankruptcy under federal law, without further restriction. S.C. Code Ann. § 6-1-10 provides:

> Power of political subdivisions to proceed under legislation dealing with bankruptcy or composition of indebtedness.
>
> The consent of the State is hereby granted to, and all appropriate powers are hereby conferred upon, any county, municipal corporation, township, school district, drainage district or other taxing or governmental unit organized under the laws of the State to institute any appropriate action and in any other respect to proceed under and take advantage of and avail itself of the benefits and privileges conferred, and to accept the burdens and obligations created, by any existing act of the Congress of the United States and any future enactment of the Congress of the United States relating to bankruptcy or the composition of indebtedness on the part of the counties, municipal corporations, townships, school districts, drainage districts and other taxing or governmental units or any of them.

This statute is applicable to the Debtor as the Debtor is a "governmental unit." While the term "governmental unit," is not defined in Title 6 of the South Carolina Code[5] or by case law, under

---

[5] "Governmental Unit" is defined in other titles of the South Carolina Code. S.C. Code Ann. § 13-1-45, which relates to the Department of Commerce's South Carolina Water and Wastewater Infrastructure Fund, defines "Government unit" as "a municipal corporation, county, special purpose district, special service district, commissioners of public works, or another public body, instrumentality or agency of this State including combinations of two or more of these entities acting jointly to construct, own, or operate a qualified project, and any other state or local authority, board, commission, agency, department, or other political subdivision created by the General Assembly or pursuant to the Constitution and laws of this State which may construct, own, or operate a qualified project." S.C. Code Ann. § 34-26-110, which relates to the South Carolina Credit Union Act, defines "Governmental unit" as "any board, agency, department, authority, instrumentality, or other unit or organizations of the federal, state, county, or municipal level of government." S.C. Code Ann. § 36-9-102, which relates to Secured

7

the Bankruptcy Code, "governmental unit" is defined to include a "municipality" and an "instrumentality of a ... State." 11 U.S.C. § 101(27). Accordingly, because the Debtor is a municipality under 11 U.S.C. § 101(40) and for purposes of 11 U.S.C § 109 as detailed above, the Debtor is a "governmental unit" for purposes of S.C. Code Ann. § 6-1-10. *In re Connector 2000 Ass'n*, 447 B.R. 752 (Bankr. D.S.C. 2011) (stating [b]ecause the Court has determined Debtor is a municipality, S.C. Code § 6-1-10 specifically authorizes it to file bankruptcy. Debtor meets this requirement of section 109(c).").

### 3. The Debtor is Insolvent.

Section 109(c)(3) requires that the chapter 9 petitioner be insolvent. 11 U.S.C. § 109(c)(3). Section 101 of the Bankruptcy Code provides that a municipality is insolvent when its financial condition is such that it is (i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or (ii) unable to pay its debts as they become due. 11 U.S.C. § 101(32)(C). Insolvency is determine based on the debtor's financial condition as of the date the petition is filed. *In re Hamilton Creek Metropolitan Dist.*, 143 F.3d 1381, 1384 (10th Cir. 1998); *In re City of Bridgeport*, 129 B.R. 332, 337 (Bankr. D. Conn. 1991).

As described in detail above, the Debtor is and has been operating at a loss and is unable to consistently pay its debts as they become due. Year-to-date ending July 31, 2011, Debtor has operated at a loss of $1,020,160. As of the date the Debtor filed its petition, it is clear the Debtor is unable to "pay its bills as they become due". 11 U.S.C. § 101(32)(C). In short, the Debtor is insolvent within the meaning of 11 U.S.C. §§ 101(32)(C) and 109(c)(3).

---

Transactions, defines "Governmental unit" as "a subdivision, agency, department, county, parish, municipality, or other unit of the government of the United States, a state, or a foreign country. The term includes an organization having a separate corporate existence if the organization is eligible to issue debt on which interest is exempt from income taxation under the laws of the United States."

8

4.     **The Debtor Desires to Effect a Plan to Adjust its Debts.**

Section 109(c)(4) requires that a chapter 9 petitioner desire to effect a plan to adjust its debts. As certified by the Debtor in its Statement of Qualifications Under 11 U.S.C. § 109(c), and demonstrated by the pre-petition efforts of the Debtor, the Debtor desires to effect a plan of adjustment with respect to its debts in this case.

5.     **The Negotiation Requirements Under Section 109(c)(5) Are Satisfied.**

Section 109(c)(5) requires that a chapter 9 petitioner demonstrate that it has satisfied or is excused from certain pre-petition negotiation standards with respect to its creditors. *See* 11 U.S.C. § 109(c)(5); *In re Connector 2000 Ass'n*, 447 B.R. 752 (Bankr. D.S.C. 2011); *In re Valley Health Sys.*, 383 B.R. 156, 165 (Bankr. C.D. Cal. 2008). A debtor must satisfy one of the following four options to satisfy Section 109(c)(5):

> (1) The debtor has obtained the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair through its plan;
> (2) The debtor has negotiated in good faith but failed to obtain the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair under its plan;
> (3) The debtor is unable to negotiate with its creditors because such efforts are impracticable; or
> (4) The debtor must reasonably believe that a creditor may attempt to obtain a preference.

11 U.S.C. § 109(c)(5). The Debtor satisfies the third requirements: it is unable to negotiate with its creditors because such negotiation is impracticable.

A.     <u>The Debtor was unable to negotiate with its creditors because such negotiation was impractical.</u>

Section 109(c)(5)(C) excuses a debtor from satisfying a pre-petition negotiation standard if "such negotiation is impracticable." 11 U.S.C. § 109(c)(5)(C). The Debtor meets this standard.

Negotiating with creditors pre-petition is impracticable within the meaning of 11 U.S.C.

9

§ 109(c)(5)(C) if there are a large number of creditors which makes negotiation a plan of adjustment impossible. *See In re County of Orange*, 183 B.R. 594, 608 (Bankr. C.D. Cal. 1995) ("Congress enacted § 109(c)(5)(C) specifically 'to cover situations in which a very large body of creditors would render prefiling negotiations impracticable'") (citations omitted).

The Debtor has been unable, prior to the filing of its chapter 9 petition to negotiate with its creditors to reach an agreement with the holders of at least a majority in amount of each class to be impaired under a plan of adjustment because such negotiation is impractical given the numerosity of holders of claims in the classes envisioned to be impaired under a plan of reorganization. The bulk (approximately 95%) of the Debtor's approximately 1,000 creditors are unsecured trade creditors holding claims of less than $20,000. It was simply impractical for the Debtor to negotiate with these creditors prior to filing its petition. *See Orange County*, 183 B.R. at 607 ("the impracticality requirement may be satisfied based on the sheer number of creditors involved."); *In re Villages at Castle Rock Metro. Dist. No. 4*, 145 B.R. 76, 85 (Bankr. D. Colo. 1990) ("It certainly was impracticable for [debtor] to have included several hundred Series D bondholders in these conceptual discussions.").

Numerosity of creditors is not the only circumstance under which the impracticability requirement might be satisfied. *In re Valley Health Sys.*, 383 B.R. 156, 165 (Bankr. C.D. Ca. 2008). Negotiations may be impractical where it is necessary to file a chapter 9 case to preserve the assets of a municipality, where a delay in filing a petition to negotiate with creditors would put those assets at risk. *See Orange County*, 183 B.R. 594 at 607-08 (negotiation impractical where there was no time to enter into negotiations with its participants due to the threat of liquidation assets); *see also* 2 Collier P 109.04[3][e][iii] at 109-35 ("[W]here it is necessary to file a chapter 9 case to preserve the assets of a municipality, delaying the filing to negotiate with

10

creditors and risking, in the process, the assets of the municipality makes such negotiations impracticable"). Even if the Debtor could negotiate with the majority of its creditors, which the Debtor cannot, the Chapter 9 filing is necessary to protect the Debtor's assets, continue its business operations, and continue providing uninterrupted healthcare services to its patients while simultaneously developing a comprehensive plan for adjustment of debts.

Accordingly, the impracticality standard under Section 109(c)(5)(C) is satisfied.

### III. CONCLUSION

For all the foregoing reasons, the Debtor is eligible to be a debtor under Section 109(c) of the Bankruptcy Code.

**HAYNSWORTH SINKLER BOYD, P.A.**

By:  /s/ Stanley H. McGuffin
District ID No. 2833
Lindsey Carlberg Livingston
District ID No. 9518

Post Office Drawer 11889
Columbia, South Carolina 29211
(803) 779.3080 Tel
(803) 765.1243 Fax
bshortl@hsblawfirm.com
llivingston@hsblawfirm.com

October 5, 2011                    Attorneys for Debtor

No. 298]   OF SOUTH CAROLINA   381
GENERAL AND PERMANENT LAWS—1953

its resources and expenditures, the number of books, periodicals and other property owned by it, the character of the service rendered the people of the county, including the number making use of its service, and such other pertinent facts as will show its activities during the preceding year. The report shall be filed in the office of the Clerk of Court for Barnwell County and copies shall be furnished to the members of the Legislative Delegation from Barnwell County.

**Section 9. Repeal.**—All acts or parts of acts inconsistent herewith are hereby repealed.

**Section 10. Time effective.**—This act shall take effect upon its approval by the Governor.

Approved the 9th day of May, 1953.

---

(R406, H1423)   No. 298

An Act To Create The Barnwell County Hospital Board And To Provide For Its Membership, Powers And Duties, And To Provide A Tax Levy For The Maintenance And Operation Of The Barnwell County Hospital.

Be it enacted by the General Assembly of the State of South Carolina:

**Section 1. Barnwell County Hospital Board—appointment—terms—vacancies.**—There is hereby created the Barnwell County Hospital Board to provide hospital facilities for the inhabitants of the county. The board shall be composed of five members who shall be appointed by the Governor on the recommendation of the Legislative Delegation from Barnwell County, one of whom shall be designated temporary chairman. The terms of office of the members of the board shall be for four years. *Provided*, however, that of the first members of the board appointed, one shall be appointed for a term of two years, two for a term of three years and two for a term of four years. Thereafter, members shall be appointed as the respective terms expire and shall serve for terms of four years, and until their successors shall have been appointed and qualify. Vacancies shall be filled for unexpired terms as they may occur, and such appointments shall be as provided for the original appointment. As soon as practicable after the appointment and qualification, the temporary chairman shall call a meeting of the board at which

Exhibit _1_

one of its members shall be elected chairman and one shall be elected secretary. The chairman and secretary first elected shall serve as such until the July next following their election.

**Section 2. Acquire real estate—accept grants and donations.—** The County Board of Managers for Barnwell County, by and with the approval of the Barnwell County Legislative Delegation, shall acquire a suitable tract of real estate located centrally in the county with respect to population and area and most available by highways to the majority of the people of the county, take title thereto in the name of the Barnwell County Hospital Board, and make such land available to the board for the construction and maintenance of the Barnwell County Hospital, the Nurses' Home and related facilities. The Barnwell County Hospital Board is authorized to accept grants-in-aid under the provisions of the Hill-Burton Act, and any other Federal Acts or Agencies, and to receive donations and grants for the construction and maintenance of the hospital from any sources whatever.

**Section 3. Powers and duties.—** The Barnwell County Hospital Board shall have complete authority in the construction and equipping of the hospital subject to the approval of the Barnwell County Legislative Delegation, after which the board shall adopt and promulgate such rules and regulations for the maintenance, operation, purchasing of supplies, and government of the said hospital as may be deemed necessary for the efficient and economical administration thereof. It shall employ an administrator and such other persons as may be necessary for the construction, operation and maintenance of the hospital, and shall fix the compensation of such employees as provided in the annual Supply Act for Barnwell County. The board shall have power to dismiss or discharge any employee.

**Section 4. Tax levy.—** There is hereby levied upon all the taxable property of Barnwell County a tax of three mills for the maintenance and operation of the Barnwell County Hospital. The levy shall be put on for the year 1953-1954 and, when collected by the county treasurer, shall be set aside in a special hospital fund which shall be drawn upon only by proper vouchers approved by the chairman and secretary of the hospital board, to be expended under the provisions of Section 3 of this act.

**Section 5. Annual meeting—report—audit.—** The board shall hold annual meetings in July of each year, at which time they shall

No. 299]    OF SOUTH CAROLINA    383
GENERAL AND PERMANENT LAWS—1953

elect a chairman and secretary, who shall hold office until the next annual election. At the annual meeting a report of the activities of the hospital, showing its resources and expenditures and complete financial status shall be made. Such report shall be filed in the office of the Clerk of Court of Barnwell County and copies shall be furnished to the members of the Legislative Delegation from Barnwell County. In addition thereto, monthly financial statements shall be filed with the Barnwell County Board of Directors and the Barnwell County Legislative Delegation. In addition to the annual meeting of the board in July, the board shall meet from time to time on the call of the chairman or a majority of the board members. The accounts of the hospital shall be audited annually, prior to the July meeting of the board, by a certified public accountant named by the Barnwell Delegation who shall make his report to the board, with a copy to the county board of managers and a copy to the Legislative Delegation from Barnwell County. Any surplus funds from the operation of the hospital at the end of any year shall be transferred to the general fund of Barnwell County.

Section 6. Repeal.—All acts or parts of acts inconsistent herewith are hereby repealed.

Section 7. Time effective.—This act shall take effect upon its approval by the Governor.

Approved the 9th day of May, 1953.

---

(B407, H1456)    No. 299

An Act To Authorize And Direct The Destruction Of Certain Records Of Chattel Mortgages, Fifteen Years Or Older, In The Office Of The Clerk Of Court For Union County.

Be it enacted by the General Assembly of the State of South Carolina:

Section 1. Clerk of Court of Union County may destroy records of certain chattel mortgages.—The Clerk of Court of Union County is hereby authorized to destroy the records (including the indices thereto) of all chattel mortgages recorded in the office of said Clerk of Court, after such mortgages have been so recorded for fifteen years or more, except chattel mortgages whose liens may remain unexpired under their special terms and provisions or under and by