UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Barnwell County Hospital,<br><br><br><br>Debtor. | C/A No. 11-06207-DD<br><br>Chapter 9<br><br>**ORDER** |

This matter is before the Court on two Motions filed by the Ad Hoc Committee to Save the Barnwell County Hospital ("Committee"). One of the Committee's Motions, filed on October 10, 2011, requests that the Court reconsider its Order setting deadlines entered October 6, 2011 and that the Court enter a Scheduling Order establishing a discovery schedule and deadlines ("Reconsideration Motion"). The Committee's second Motion, filed on October 11, 2011, requests that the Court determine that the Committee is a party in interest for purposes of objecting to the Barnwell County Hospital's ("Debtor") eligibility ("Standing Motion"). Responses to the Committee's Motions were filed by Debtor on October 17, 2011, and the Committee filed a Reply to Debtor's Response to its Standing Motion on October 19, 2011. A hearing was held October 20, 2011. Following the hearing, the Court took the matters under advisement for further consideration. The Court now issues the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

Debtor filed for chapter 9 protection on October 5, 2011. Debtor is a hospital located in Barnwell, South Carolina. Debtor provides many of the services normally provided by a hospital, including general medical and surgical care. Debtor also owns and operates three

health clinics in towns throughout the county. Debtor currently employs 14 physicians in its facilities.

Debtor contends that its chapter 9 filing was precipitated by large operating losses. Prior to its bankruptcy filing, Debtor was able to stay in business due to funding provided by the County, but continued to struggle financially despite the County's assistance. After receiving news that the County would not provide funding to Debtor in the future, Debtor filed its chapter 9 case. The Committee disputes these statements by Debtor.

Debtor has located an entity who wishes to purchase it and another hospital, Bamberg County Memorial Hospital, which also has a chapter 9 case pending before this Court.[1] Following the purchase, the purchaser intends to consolidate the hospitals into one hospital which would serve both counties. The location of the new hospital has not yet been determined.

The Committee is a group of citizens formed for the purpose of attempting to keep the Barnwell County hospital open and operating in its current location. In a stipulation between Debtor and the Committee, the Committee included the following statement, which all members have signed:

> As a resident of Barnwell County, the undersigned agrees to become a member of and support an *ad hoc* committee for the purpose of achieving the following goals:
> 1. To preserve and protect the existence of the Barnwell County Hospital and to insure that it remains in Barnwell County;
> 2. To oppose the filing of bankruptcy by the Barnwell County Hospital Board; and
> 3. To oppose the sale of the Barnwell County Hospital.

Stipulation By and Between Ad Hoc Committee to Save the Barnwell County Hospital and Barnwell County Hospital, docket # 31.

---

[1] In re Bamberg County Memorial Hospital, 11-03877-dd, filed June 20, 2011.

Currently comprised of between 900 and 1200 members and still increasing in number, the Committee alleges that its members will be severely harmed if the current location of the hospital is closed. The Committee argues that Debtor is not eligible for chapter 9 relief and also contests Debtor's good faith in filing the case.

## CONCLUSIONS OF LAW

### I. Standing in Federal Court

The test used in federal courts to determine whether a party has standing was stated by the United States Supreme Court almost twenty years ago:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'". Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations omitted). In a bankruptcy case, in addition to constitutional standing concerns, the standing of a party requesting to be heard is dependent on whether the party is a party in interest. *See In re Global Indus. Techs., Inc.*, 645 F.3d 201, 210 (3rd Cir. 2011) (discussing Article III standing requirements as well as the standard for a party in interest). "Party in interest" is a term of art in bankruptcy. Although not defined in the Bankruptcy Code, it reflects the unique nature of a bankruptcy case, where the global financial circumstances of a debtor are resolved with respect to all of debtor's creditors and other affected parties.

This Court has previously held that a determination regarding party in interest status must be made on a case by case basis. *In re Woodberry*, 383 B.R. 373, 378 (Bankr. D.S.C. 2008)

(quoting *In re Vieland*, 41 B.R. 134, 138 (Bankr. N.D. Ohio. 1984)). In a chapter 11 context, courts have frequently stated that 11 U.S.C. § 1109(b), providing a nonexclusive list of parties in interest and stating that such parties may be heard on any issue in a case under chapter 11, should be broadly construed "in order to allow parties affected by a chapter 11 case to appear and be heard." *In re Bumper Sales, Inc.*, 907 F.2d 1430, 1433 (4th Cir. 1990) (quoting *In re Pub. Serv. Co. of New Hampshire,* 88 B.R. 546, 550 (Bankr. D.N.H. 1988)). Courts have used a variety of relatively similar standards for determining party in interest status. The Fourth Circuit has stated that all persons with pecuniary interests who are directly affected by a bankruptcy proceeding are parties in interest. *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir. 1993) (quoting *White County Bank v. Leavell (In re Leavell)*, 141 B.R. 393, 399 (Bankr. S.D. Ill. 1992)). A court in the Third Circuit has stated that the test under section 1109(b) is whether the party seeking party in interest status has a "'sufficient stake in the outcome of the proceeding so as to require representation.'" *In re Pub. Serv. Co. of New Hampshire*, 88 B.R. 546, 551 (Bankr. D.N.H. 1988) (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)). In *Wolf Creek Valley Metro. Dist. No. IV*, 138 B.R. 610 (D. Colo. 1992), a chapter 9 case, the court stated, "[M]any courts have concluded that 'the party requesting standing must either be a creditor of a debtor . . . or be able to assert an equitable claim against the estate.'" *Wolf Creek*, 138 B.R. at 616 (quoting *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989)).

In *In re Addison Community Hospital Authority,* 175 B.R. 646 (Bankr. E.D. Mich. 1994), a chapter 9 case, a group of citizens from the area surrounding the hospital filed a motion to intervene in the debtor's chapter 9 case. The group, which called itself Concerned Citizens for Addison Community Hospital Authority ("Concerned Citizens"), argued that its members had a right to intervene based on their asserted interests as "special taxpayers" under 11 U.S.C. § 943.

*Id.* at 648. The *Addison* court addressed Concerned Citizens' standing as a special taxpayer under 11 U.S.C. § 943, but also addressed whether it was a party in interest to the bankruptcy case. The court also addressed Concerned Citizens' right to intervene under Fed. R. Bankr. P. 7024. The court first held that those members of Concerned Citizens that were creditors of the debtor were parties in interest. *Id.* at 650. However, with respect to the members that were not creditors, the court held they did not have standing. *Id.* In so finding, the court stated:

> For the remaining members of Concerned Citizens who are not creditors, § 1109(b) must be broadly construed to permit parties affected by the proceeding to appear and be heard. In interpreting who is a "party in interest," this Court is governed by the Code's purpose. The purpose of chapter 9 is to allow municipalities the opportunity to remain in existence through debt adjustment and obtain temporary relief from creditors. Congress has explicitly stated in the legislative history that the courts do not have jurisdiction to interfere with the political and policy choices a municipality makes in running its organization; rather, courts are limited to approving or disapproving proposed plans for debt adjustment.
>
> The Court concludes that the members of Concerned Citizens who are not creditors do not have standing to be heard under § 1109(b). This Court should not be so liberal in granting applications to be heard as to overburden the debt adjustment process. Where a party is merely interested in the outcome of the matter and does not have a direct legal interest in the chapter 9 proceeding, that party is not a "party in interest." By allowing a large number of non-creditors to be heard in this action, the Court would be granting a blanket invitation to all parties in the area serviced by Addison. This would hamper, and unduly delay, the debt adjustment process.

*Addison Cmty. Hosp.*, 175 B.R. at 650 (internal citations omitted).

The Committee seeks to distinguish *Addison*, where the dispute with Concerned Citizens arose at the time of plan confirmation. Here the dispute arises in the initial stages of the case and goes to the eligibility of Debtor to maintain a chapter 9 case. The Court recognizes this often important distinction but finds that it is immaterial for purposes of determining the matter presently before it. Clearly Debtor's authority to file a petition and its eligibility to be a debtor under the Bankruptcy Code are issues within the jurisdiction of the Court. Standing of the

Committee to raise and contest such authority and eligibility is dependent on the Committee meeting the test set forth in *Lujan*, as well as satisfying the party in interest standard.

### II. Standing in State Court

While the present issues before the Court require a determination based on federal law, it is useful to look to state law to assist in the Court's decision regarding the Committee's party in interest status. An examination of state law on standing is especially germane since many of the issues raised by the Committee go to the state law issues underlying the contention that Debtor is not authorized to file bankruptcy rather than to Debtor's eligibility for bankruptcy relief. The South Carolina Supreme Court has stated, "A private person may not invoke the judicial power to determine the validity of executive or legislative action unless he has sustained, or is in danger of sustaining, prejudice therefrom. '[I]t is not sufficient that he has merely a general interest common to all members of the public. . . .'" *Florence Morning News v. Bldg. Comm'n of City and County of Florence*, 265 S.C. 389, 398, 218 S.E.2d 881, 884–85 (1975) (quoting *Ex parte Levitt*, 302 U.S. 633 (1937)). *See also ATC South, Inc. v. Charleston County.*, 380 S.C. 191, 196, 669 S.E.2d 337, 339 (2008) (quoting *Evins v. Richland County Historic Pres. Comm'n*, 341 S.C. 15, 21, 532 S.E.2d 876, 879 (2000)); *Citizens for Lee County, Inc. v. Lee County*, 308 S.C. 23, 29, 416 S.E.2d 641, 645 (1992) ("[S]uch imminent prejudice must be of a personal nature to the party laying claim to standing and not merely of general interest common to all members of the public.") (citing *Ex parte Levitt*, 302 U.S. 633 (1937); *Energy Research Found. v. Waddell*, 295 S.C. 100, 102, 367 S.E.2d 419, 420 (1988)). When a taxpayer is the objecting party, courts are more lenient and often find the taxpayer has standing to pursue an action against the alleged offending entity. However, a mere hypothetical injury the taxpayer shares in common with all

other taxpayers is not sufficient for taxpayer standing, even under South Carolina's more lenient taxpayer standing standards. *See ATC South*, 380 S.C. at 198, 669 at 340–41.

An often-utilized exception to the general standing principles is the "public importance" exception. This exception can be invoked when "an issue is of such public importance as to require its resolution for future guidance." *Davis v. Richland County Council*, 372 S.C. 497, 500, 642 S.E.2d 740, 741–42 (2007) (citing *Sloan v. Dep't of Transp.*, 365 S.C. 299, 618 S.E.2d 876 (2005); *Sloan v. Wilkins*, 362 S.C. 430, 608 S.E.2d 579 (2005)). If the South Carolina court finds that a case involves an important public interest, it may find that standing exists despite the plaintiff's lack of any special, particularized interest. *Davis*, 372 S.C. at 500, 642 S.E.2d at 742.

**III. Standing of Committee**

The Committee has not met the *Lujan* standing test and is not a party in interest.[2] The Committee argues that it will be harmed if the hospital is closed and relocated because some of its members will have more limited access to the new hospital. However, the location of the new hospital has not yet been determined. In fact, the new hospital could be located in Barnwell County and could very well be closer to some of the Committee's members. It has not been shown that the Committee's members will experience an actual, imminent injury if Debtor's plan is effectuated; at best, it appears that the harm the Committee is alleging is hypothetical, contingent, and speculative.

Additionally, even if it were certain that such actual injury would result, the Committee has not shown that its members have some interest or will suffer some injury that is not common to the other residents of Barnwell County. No evidence was presented showing that any of the members of the Committee has a pecuniary interest in this bankruptcy proceeding. At the

---

[2] The Court notes that if some members of the Committee are creditors of Debtor, those members are parties in interest by virtue of section 1109(b) and would have the ability to object under that section.

hearing, the Committee focused solely on its interest in keeping the hospital in Barnwell County. Since the hospital is the only hospital which services Barnwell County, it is presumably the hospital that Barnwell County residents would use if in need of medical services. This means that if the hospital is relocated to another county, all Barnwell County residents will suffer the same injury that the Committee's members will suffer; thus, the Committee is not alleging a unique, particularized injury to its members will result. The fact that the Committee currently has between 900 and 1200 members and is still growing is further evidence of the lack of particularized injury. The Committee's members may or may not reflect the view of a significant percentage of the County's residents. Regardless, the Committee's members will not suffer injury different from that suffered by all the residents of Barnwell County. Given that the County Council has supported Debtor's actions, it is conceivable that some citizens would actually favor Debtor's plan for the relocation of the hospital. As stated in *Addison*, allowing the Committee the opportunity to be heard would invite all other residents of Barnwell County not already included to come join the proceedings. *See Addison Cmty. Hosp.*, 175 B.R. at 650. Allowing all citizens to be heard in Debtor's eligibility proceeding would not be productive for anyone involved, but would merely cause confusion and delay. The Committee does not have standing to object to Debtor's eligibility.

Although federal law controls in this matter, the Court notes that the public importance exception under South Carolina law has no application here, as this case does not involve an important public interest sufficient to establish standing under South Carolina law. Certainly, convenient medical care for all citizens is a matter of public interest. However, no evidence regarding potential locations of the new hospital and their proximity to the old location was or could be presented at this time, and it is unclear as to whether potential locations have even been

considered at this early stage of the case. As pointed out by the Committee itself, the issue before the Court at this time is eligibility under chapter 9, not any issue regarding rehabilitation of Debtor. An important public interest is not being affected such that standing under South Carolina law's public importance exception should be invoked for purposes of determining Debtor's eligibility for chapter 9 relief.

The Committee produces a citation to the United States Courts website which states, "Parties in interest include municipal employees, *local residents*, non-resident owners of real property, special tax payers, securities firms, and local banks."
Intervention/Right of Others to be Heard, Municipality Bankruptcy, *available at*
www.uscourts.gov/federalcourts/bankruptcy/bankruptcybasics/chapter9.aspx (emphasis added).
The Committee argues that the listing of local residents as parties in interest on a website maintained by the Federal Courts proves that it is entitled to party in interest status. The Court disagrees. As stated above, whether a party is a party in interest should be determined on a case by case basis. *In re Woodberry*, 383 B.R. 373, 378 (Bankr. D.S.C. 2008) (quoting *In re Vieland*, 41 B.R. 134, 138 (Bankr. N.D. Ohio. 1984)). Certainly, there may be some instances in which local residents would meet the requirements for standing and would be entitled to party in interest status. The Committee's request to test Debtor's eligibility is not such a case. The Committee has not shown that its members will suffer an actual, particularized injury different from that suffered by the general public. As a result, the Committee is not a party in interest to contest eligibility in Debtor's chapter 9 bankruptcy case.

Perhaps most importantly, the Court remains mindful of its duty not to interfere with the rights and duties of the State and its subordinate political subdivisions. *See Addison Cmty. Hosp.*, 175 B.R. at 649 ("A primary distinction between chapter 11 and chapter 9 proceedings is

that in the latter, the law must be sensitive to the issue of the sovereignty of the states."). 11 U.S.C. § 904 states that the court may not, absent consent of the debtor or a plan provision providing otherwise, interfere with "any of the political or governmental powers of the debtor." Congress has cautioned, "'The powers of the court are subject to a strict limitation–that no order or decree may in any way interfere with the political or governmental powers of the petitioner, the property or revenue of the petitioner, or any income-producing powers.'" *Addison Cmty. Hosp.*, 175 B.R. at 649 (quoting 121 Cong. Rec. H39409-10 (daily ed. Dec. 9, 1975) (statement of Rep. Edwards)). The United States Supreme Court has also repeatedly discussed the need for respect of state sovereignty and has found that Congress and the federal courts should not interfere with legitimate state interests even in the context of a municipal bankruptcy. *See United States v. Bekins*, 304 U.S. 27, 51–52 (1938) (finding that amendment to Bankruptcy Act was constitutional because it did not "impinge upon the sovereignty of the State"); *Ashton v. Cameron County Water Improvement Dist. No. 1*, 298 U.S. 513, 531–32 (1936) (holding that amendment to Bankruptcy Act was unconstitutional because it infringed upon state sovereignty). More recently, in a matter strikingly similar to the one presently before the Court, the court in *Addison* stated, "[C]hapter 9 was created to give courts only enough jurisdiction to provide meaningful assistance to municipalities that require it, not to address the policy matters that such municipalities control." *Addison Cmty. Hosp.*, 175 B.R. at 649.

The actual crux of the Committee's objection to Debtor's eligibility is the manner in which the County Council took action with regard to the hospital's board of directors prior to the bankruptcy filing. If the Court were to get involved in such a matter, the Court would find itself directly in the middle of a governance dispute which is best settled in state court litigation between grieved citizens and the County Council, who is not a party to this proceeding, or

alternatively, at the ballot box. The Court's powers do not extend to such a dispute, and it is the Court's responsibility to avoid inserting itself in the middle of a dispute involving the state's rights and duties in carrying out its governmental objectives. Further, the Court notes that although the Court can consider the legality or propriety of actions that form the basis for Debtor's authority to file a case, the Committee's dispute is not with Debtor but with the County Council, a third party not before the Court. As a result, it appears that the second prong of the test set forth in *Lujan* is not met. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The Court cannot find that the Committee has standing to object to Debtor's eligibility when the Committee's true intent is to resolve its dispute with the County Council. The Court cannot get involved in such governmental disputes with a party not presently before the Court. The Committee has no standing and is not a party in interest to contest Debtor's eligibility.

## IV. Debtor's Eligibility

Despite the Court's finding that the Committee is not a party in interest such that it may contest Debtor's eligibility, the Court has a responsibility to independently evaluate Debtor's eligibility to pursue a chapter 9 case. As a result, Debtor will bear the burden of proving to the Court that it meets all eligibility requirements set forth in 11 U.S.C. § 109(c). The deadline to contest Debtor's eligibility is November 11, 2011. As a result, it is possible that a party in interest may object to the petition prior to the deadline. Regardless of whether a further objection is filed, given the issues raised by the Committee, the Court will require a showing of eligibility by Debtor. If Debtor fails to meet its burden, its case will be dismissed.

## **CONCLUSION**

For the reasons set forth above, the Committee is not a party in interest in Debtor's chapter 9 case, and its Standing Motion is denied. The Committee's Reconsideration Motion is moot.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**10/27/2011**



Entered: 10/27/2011

/s/ David R. Duncan

David R. Duncan
US Bankruptcy Judge
District of South Carolina