UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Barnwell County Hospital,<br><br>Debtor. | Case No. 11-06207-dd<br><br>Chapter 9 |

**ORDER GRANTING DEBTOR'S MOTION FOR AN ORDER AUTHORIZING A SUBSTITUTE ASSET PURCHASE AGREEMENT IN AID OF IMPLEMENTATION OF THE PLAN AND APPROVING THE NOTICE AND APPLICATION FOR SETTLEMENT AND COMPROMISE BETWEEN DEBTOR AND SC REGIONAL HEALTH SYSTEM, LLC**

This matter is before the Court on the Motion for an Order Authorizing a Substitute Asset Purchase Agreement in Aid of Implementation of the Plan ("Substitution Motion") entered by the debtor, Barnwell County Hospital ("Debtor"), on December 7, 2012. The Court held a hearing on the Substitution Motion on January 9, 2013. Prior to the hearing, objections to the Substitution Motion were filed by Don Alexander ("Alexander"), the United States Department of Health and Human Services ("HHS"), and SC Regional Health System, LLC ("RHS"). Counsel for the Estate of Robert M. Peeples and six participants of the Barnwell County Pension Plan also appeared at the January 9th hearing and argued in opposition to the Substitution Motion. No party objected at the hearing to counsel for these interested parties arguing in opposition to the Substitution Motion even though no written objection was filed on their behalf prior to the hearing. The Estate of Robert M. Peeples and six participants of the Barnwell County Pension Plan filed a written objection to the Substitution Motion on March 25, 2013.

This matter is also before the Court on the Notice and Application for Settlement and Compromise ("Settlement Application") seeking approval of a Settlement Agreement and

1

Release ("Settlement Agreement") between Debtor and RHS entered on February 27, 2013.[1] Objections to the Settlement Application were filed by Alexander, General Electric Corporation d/b/a GE Healthcare Diagnostic Imaging ("GE"), and the Estate of Robert M. Peeples and six participants of the Barnwell County Pension Plan. A hearing was held on the Settlement Application on April 8, 2013. After careful consideration of the applicable law, arguments of counsel, and evidence submitted, the Court grants the Substitution Motion and approves the Settlement Application.

## FINDINGS OF FACT[2]

1. On October 5, 2011, Debtor filed a petition seeking relief under chapter 9 of the United States Bankruptcy Code ("Bankruptcy Code"). Prior to the filing of its petition, the Debtor had been unable to pay its debts as they became due. For years, Barnwell County provided funding to keep Debtor operating, but Debtor was informed that Barnwell County would no longer provide funding. Furthermore, as a rural hospital, Debtor does not have the customer volume to pay for new technology and facilities that larger hospitals in neighboring areas can provide. Based upon those factors, Debtor, along with Bamberg County and Bamberg County Memorial Hospital ("Bamberg Hospital"), sought a third party purchaser to provide healthcare for the residents of Bamberg County and Barnwell County.

2. On September 29, 2011, Debtor, along with Bamberg Hospital, Barnwell County, and Bamberg County, executed an Asset Purchase Agreement ("Original APA") with RHS for

---

[1] A copy of the Settlement Agreement was attached to the Settlement Application as Exhibit A. Other parties to the Settlement Agreement include Barnwell County, Bamberg County, Bamberg County Memorial Hospital ("Bamberg Hospital"), and Dobbs Equity Partners, LLC ("Dobbs"). According to Debtor, these parties are parties to the Settlement Agreement for the purpose of providing mutual releases and have no other obligations under the Settlement Agreement.

[2] To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

2

the purchase of substantially all of the assets of Debtor and the Bamberg Hospital.[3]  Debtor's Amended Plan for Adjustment of Debts, as modified by the Debtor's Modification to First Amended Plan for Adjustment of Debts (collectively, the "Plan") was based on the transaction contemplated by the Original APA.  On May 23, 2012, the Bankruptcy Court entered its Order confirming the Debtor's Plan (the "Confirmation Order").

3.      The transaction contemplated under the Original APA did not close, the reasons for which were vigorously contested by Debtor and RHS.  As a result of the transaction not closing, RHS filed an application seeking payment of an administrative expense claim ("RHS Application") in the amount of approximately $1,819,000.00 for liquidated damages under the Original APA and for compensation and reimbursement of fees and expenses under a separate Consulting Agreement between Debtor and RHS.  Debtor objected to the RHS Application and disputed that RHS was entitled to a claim against Debtor.  Additionally, Debtor asserted that it was entitled to damages against RHS, which RHS disputed.

4.      When the transaction did not close under the Original APA, Debtor sought a new purchaser to be substituted for RHS and close the transaction in accordance with the terms approved in the Plan.  Debtor located a new purchaser and executed a new Asset Purchase Agreement with BCH Acquisitions Group, LLC ("BCH Acquisitions Group" or "New Purchaser") dated November 26, 2012 (the "New APA").  Thereafter, on December 7, 2012, Debtor filed the Substitution Motion seeking an Order from this Court authorizing Debtor to substitute the New APA in place of the Original APA and allowing Debtor to sell its assets to BCH Acquisitions Group instead of RHS as contemplated in the Plan.  Debtor's Plan cannot be fully consummated and implemented unless the Court authorizes this substitution.

---

[3] Bamberg Hospital also filed a chapter 9 petition, and its bankruptcy case is still pending.  *See* Case No. 11-03877-dd.

5. Under the Original APA, RHS was entitled to any payment incentives Debtor had previously received or was entitled to receive at closing under the Health Information Technology for Economic and Clinical Health Act ("HITECH Act"). RHS planned to use the HITECH funds to pay the claims of HHS, First Citizens Bank and Trust Company, Inc. ("First Citizens"), and the South Carolina Office of Rural Health ("SCRH") as provided in the confirmed Plan, and then keep the remainder of the HITECH funds, with none of the remaining funds being used to pay creditors. Under the New APA, Debtor is entitled to retain all HITECH funds for the two fiscal years ending September 30, 2011, and September 30, 2012, which total approximately $2,578,000.[4] Since Debtor is retaining these HITECH funds under the New APA, these funds are available to pay operating expenses and claims. Additionally, under the New APA, BCH Acquisitions Group, as part of the purchase price, is paying all the amounts RHS had agreed to pay to Stroudwater Capital, HHS, First Citizens, and SCRH without using the HITECH funds, as well as paying $50,000 in costs Debtor has incurred during bankruptcy.

6. In addition to seeking an administrative expense priority claim against Debtor in the amount of approximately $1,819,000.00, RHS filed an objection to the Substitution Motion. The Court held a hearing on the Substitution Motion on January 9, 2013. After the hearing on the Substitution Motion, Debtor and RHS mediated their dispute and entered into the Settlement Agreement which resolves all issues between RHS and Debtor, including the RHS Application and the objection of RHS to the Substitution Motion. As part of the settlement, RHS agrees to withdraw with prejudice the RHS Application and its objection to the Substitution Motion upon payment of the settlement funds.

---

[4] Debtor indicates it used some of these funds to keep the hospital operating and to settle a dispute with Creekridge, which claimed a lien on the HITECH funds. Additionally, Debtor plans to use a portion of the HITECH funds to pay the settlement with RHS.

4

7.      At the April 8, 2013 hearing, Mary Valient, who has been the Chief Executive Officer ("CEO") of Debtor since 2009, testified Debtor currently owes about $2.2 million to vendors.  She testified that Debtor has funds to operate for three more months, and at that point, Debtor would need to turn to Barnwell County for additional funds.  This projection includes using the HITECH funds as well as money the State of South Carolina seizes from the tax refunds of individuals who owe money to Debtor.[5]

8.      At the April 8, 2013 hearing, a representative of BCH Acquisitions Group testified that BCH Acquisitions Group is ready to move forward with finalizing and closing the transaction described in the New APA.  He also testified BCH Acquisitions Group will have a capitalization of $4 to $8 million at the closing of the New APA.

## CONCLUSIONS OF LAW

**I.      Jurisdiction**

The Court has jurisdiction over the matters before it pursuant to 28 U.S.C. §§ 157(a) and 1334, Article XIII of the Plan (setting forth "Retention of Jurisdiction of the Court"), and page 42 of the Confirmation Order (stating that the "Bankruptcy Court's retention of jurisdiction as set forth in Article XIII of the Plan is approved").

On June 6, 2012, Alexander, an intervener in the case, filed a Notice of Appeal of the Confirmation Order.  This appeal is currently pending before the United States District Court for the District of South Carolina ("District Court").  "The general rule is that the filing of a timely and sufficient notice of appeal immediately transfers jurisdiction of all matters relating to the appeal from the district court to the court of appeals."  *Grand Jury Proceedings Under Seal v.*

---

[5] At the April 8, 2013 hearing, counsel for the Estate of Robert M. Peeples and six participants of the Barnwell County Pension Plan introduced some financial reports for the Barnwell County Hospital into evidence.  The Court does not find that these reports impeach Ms. Valient's testimony regarding the financial condition of the hospital.

*United States*, 947 F.2d 1188, 1190 (4th Cir. 1991). "The rule is not absolute, however," and is a "'judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time.'" *Id.* (quoting *In re Thorp*, 655 F.2d 997, 998 (9th Cir. 1981)). An appeal does not divest a lower court of jurisdiction in at least three circumstances: "(1) over issues not involved in the appeal; (2) when the order appealed from is not appealable; or (3) when the court's action will aid in the appeal." *In re Daufuskie Island Prop., LLC,* 441 B.R. 49, 55 (Bankr. D.S.C. 2010) (citations omitted).

In his appeal, Alexander is challenging the eligibility of Debtor under 9 U.S.C. § 109 on the grounds that the Barnwell County Hospital Board was not properly constituted due to violations of the South Carolina constitutional prohibition on dual office holding. In his objections to the Substitution Motion and the Settlement Agreement, Alexander asserts that if he is successful on appeal, Debtor's actions in voting to proceed on the Original APA and proceeding with this bankruptcy are void. In addition, Debtor's actions during this bankruptcy, including the decision to enter into the New APA and the Settlement Agreement, would be void without the approval of a properly constituted Hospital Board.

While the Court notes Alexander's rights regarding his appeal of the Confirmation Order are preserved, the Court finds the issues of whether to grant the Substitution Motion and approve the Settlement Agreement are sufficiently different than the issue on appeal that it is appropriate for the Court to make a decision on both matters before it. The relationship between the issues is that if Debtor is not eligible to file under chapter 9, then its actions in this case, including entering into the New APA and the settlement with RHS, are void. The Court concludes that this relationship is not such that this Court should delay approving the settlement or granting the Substitution Motion. If this relationship were sufficient, the Court would be barred from

essentially taking any further action in this case pending the outcome of the appeal, effectively granting a stay of the case that was never requested. Furthermore, the Plan that was confirmed envisioned a sale of Debtor's assets. No party sought a stay of the sale pending the outcome of the appeal. Because the original transaction did not close, Debtor now seeks to substitute a new purchaser for its assets. Given that no party requested a stay of the initial sale, the Court sees no reason to delay ruling on whether to grant a motion to modify the Plan to allow for a substitute purchaser so that the sale can proceed. Indeed, but for the dispute with RHS, the sale of Debtor's assets likely would be complete at this point. Furthermore, the Court concludes that approving the settlement neither interferes with the District Court's resolution of the issue on appeal nor results in the same issue being placed before two courts at the same time. *See Grand Jury Proceedings Under Seal*, 947 F.2d at 1190. Debtor is taking the risk that the appeal may result in a reversal of this Court's decision, including the possible consequence that it is not eligible to file under chapter 9 and its actions in this case are void. In going forward with the Settlement Agreement and Substitution Motion, RHS and BCH Acquisitions Group also risk the appeal resulting in a reversal and the possible consequences that might flow from such an outcome. In sum, the Court finds that proceeding forward with granting the Substitution Motion and approving the settlement is consistent with the purpose behind the rule that filing a notice of appeal generally transfers jurisdiction of all matters relating to the appeal from the lower court to the appellate court.[6]

---

[6] Alexander also filed a declaratory judgment action in the Barnwell County, South Carolina Court of Common Pleas asserting the Barnwell County Council members violated provisions against dual office holding in the South Carolina Constitution. The Court of Common Pleas granted the defendants' motion to dismiss, and the matter is currently on appeal before the South Carolina Supreme Court, which heard oral argument on April 2, 2013. Counsel for the Estate of Robert M. Peeples and Six Participants of the Barnwell County Pension Plan requests the Court delay approving the settlement between Debtor and RHS until after the South Carolina Supreme Court issues a decision. However, there is no certainty regarding when a decision will

## II.     Substitution Motion

### A. Modifications after Confirmation under Chapter 9

Through the Substitution Motion, Debtor seeks to substitute the New APA with BCH Acquisitions Group for the Original APA with RHS.  Therefore, as an initial matter, the Court must decide whether a chapter 9 debtor can modify a plan post-confirmation.  As statutory authority for the modification, Debtor cites sections 945, 1142(b), 1145, and 105(a) of Title 11 of the United States Code made applicable by sections 103(f) and 901 of Title 11.  Section 945 provides that in a chapter 9 case, "[t]he court may retain jurisdiction over the case for such period of time as is necessary for the successful implementation of the plan."  11 U.S.C. § 945(a).  Section 103(f) states that "[e]xcept as provided in section 901 of this title, only chapters 1 and 9 of this title apply in a case under such chapter 9."  11 U.S.C. § 103(f).  Section 901 lists sections of other chapters that are applicable in a chapter 9 case, including sections 1142(b) and 1145.  11 U.S.C. § 901(a).  Section 1142(b) states that "[t]he court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan."  11 U.S.C. § 1142(b).  Section 1145 deals with exemptions from securities laws.  11 U.S.C. § 945.  Finally, section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]."  11 U.S.C. § 105(a).

---

be issued, and there may need to be further proceedings before the District Court, which has the appeal from this Court, before the Court knows the impact of the South Carolina Supreme Court's decision on this case.  Further, Congress through 11 U.S.C. § 904 has given this Court limited authority over how and when the settlement funds are paid to RHS.  Therefore, this request is denied.

While chapter 9 incorporates much of chapter 11 through section 901, it does not incorporate section 1127(b), which deals with modifications of chapter 11 plans after confirmation. Nonetheless, several courts have concluded that modifications after confirmation are permissible in chapter 9 cases. *See Wells Fargo Bank & Union Trust Co. v. Imperial Irrigation District*, 136 F.2d 539, 549-550 (9th Cir. 1943) (upholding a provision in a plan of a local taxing agency that "provided for further modification of the plan by consent of the debtor, the California Districts Securities Commission, and 75% of the creditors affected by the modification"); *Am. United Life Ins. Co. v. Haines City*, 117 F.2d 574, 576 (5th Cir. 1941) ("We are unwilling to put a plan into such a strait jacket. It may be that some other matter has been overlooked or has subsequently arisen, which makes the plan unworkable and complicated, but which could easily and justly be remedied. Surprise or mistake may affect it. There ought to be some leeway for such adjustments."); *In re Wolf Creek Valley Metro. Dist. No. IV*, 138 B.R. 610, 619-20 (D. Colo. 1992) (reversing a bankruptcy court's decision that it could not modify a chapter 9 plan after confirmation); *see also* 6 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* § 942.03 (16th ed. 2013) ("[A] bankruptcy court has sufficient authority to consider, after such notice and a hearing as is appropriate under the circumstances, postconfirmation modifications and authorize such modifications that are necessary for the successful adjustment of the chapter 9 debtor's debts."). However, at least one bankruptcy court has reached the opposite conclusion. *See In re East Shoeshone Hosp. Dist.*, No. 98-20934-9, 2000 WL 33712301, at *3 (Bankr. D. Idaho Apr. 27, 2000) ("Chapter 9 contains no provision allowing for modification of a plan after confirmation. In this regard, it is unlike chapter 11 or chapter 12 which have such provisions. It appears clear that Congress knew how to provide for post-confirmation modifications when it intended that right or power to exist. The Court must

conclude that the absence of a correlative provision in chapter 9 was intentional. A plain reading of the Code indicates that, in chapter 9, post-confirmation modifications are not allowed." (citation omitted)).

### B. Analysis

After careful consideration, the Court will allow a modification under the facts before it. Aside from the fact that Congress did not explicitly state that a chapter 9 plan can be modified after confirmation, the Court sees no reason why modifications should be allowed in the chapter 11 context but not in chapter 9 cases. Simply stated, the Court is unwilling the place the plan before it in "straight jacket" and agrees it is necessary to provide "some leeway for . . . adjustments." *Am. United Life Ins. Co.*, 117 F.2d at 576; *In re Wolf Creek Valley Metro. Dist. No. IV*, 138 B.R. at 620. Moreover, the Court concludes *In re East Shoeshone Hospital District* is distinguishable. As an initial matter, unlike the other decisions the Court has either found or the parties have cited regarding the issue, *In re East Shoeshone Hospital District* is not an appellate decision. In addition, the debtor in that case proposed a change that would dramatically alter the treatment of a creditor who objected to the modification. *See In re East Shoeshone Hosp. Dist.*, 2000 WL 33712301, at *4. Debtor proposes no such change here. Finally, the May 23, 2012 Confirmation Order entered in this case contains a section on modifying the Plan prior to consummation, which states: "Subject to certain restrictions and requirements set forth in §§ 942 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, after the Confirmation Date and prior to consummation of the Plan, the Debtor may: (a) amend or modify the Plan one or more times as may be necessary to carry out the purposes and effects of the Plan so long as such amendment(s) do not materially and adversely affect the treatment of any creditor or equity security holder under the Plan . . . ." (Docket # 218-2, p. 41). No party

appealed the inclusion of this provision in the Confirmation Order, and the Court finds that its granting of the Substitution Motion is consistent with this provision of the Confirmation Order.

After examining the differences between the Original APA and the New APA, the Court finds it appropriate to approve the proposed modification. Significantly, no party has demonstrated that modifying the Plan in the manner Debtor proposes materially and adversely affects the treatment of a creditor when compared with the treatment that creditor would have received under the Plan in the form originally confirmed by the Court. The New APA also provides significant additional funds to the estate because Debtor will retain more of the HITECH funds and BCH Acquisitions Group will pay $50,000 in costs Debtor has incurred during bankruptcy. Furthermore, many of the differences between the New APA and Original APA are because the sale of assets no longer includes Bamberg County or Bamberg Hospital and because BCH Acquisitions Group does not anticipate building a new hospital but rather will operate the existing Barnwell County Hospital.

Notice of the Substitution Motion was provided to creditors and other parties in interest, and the Court held a hearing on January 9, 2013. Only a handful of objections were filed.

### 1. *The Alexander Objection*

Alexander's objection to the Substitution Motion has been addressed previously in this Order and is overruled. The overruling of his objection does not impact his rights in connection with the appeal of the Confirmation Order or interfere with the District Court's resolution of the issue on appeal.

### 2. *The RHS Objection*

RHS submitted an objection to the Substitution Motion. Debtor and RHS have entered into a settlement, which this Court approves for the reasons discussed below. As part of the

settlement, RHS agrees to withdraw its objection to the Substitution Motion upon payment of the settlement funds.[7]

    *3. The HHS Objection*

HHS filed a limited objection to clarify that if BCH Acquisitions Group is assigned Debtor's Medicare numbers/agreements, then BCH Acquisitions Group takes all rights/liabilities associated with the provider agreements as provided under Medicare law, regardless of what the New APA says about the obligations BCH Acquisitions Group is assuming. Counsel for Debtor stipulated at the hearing that to the extent Debtor assumes and assigns its Medicare provider agreements to BCH Acquisitions Group, such assumption would be fully consistent with and subject to applicable law and regulations governing Medicare provider numbers. Therefore, to the extent Debtor assumes and assigns its Medicare provider agreements to BCH Acquisitions Group, such assumption and assignment shall be fully consistent with and subject to applicable laws and regulations governing Medicare provider numbers/agreements.

    *4. The Objection of the Estate of Robert M. Peeples and Six Participants of the Barnwell County Pension Plan*

Counsel for the Estate of Robert M. Peeples and six participants of the Barnwell County Pension Plan did not file an objection to the Substitution Motion prior to the hearing on January 9, 2013. However, he did appear at the hearing and argue in opposition to the Substitution Motion, and no party objected at that time to his doing so. On March 25, 2013, he submitted a written objection to the Substitution Motion. He asserts the Bankruptcy Code does not permit a chapter 9 debtor to modify a plan after confirmation and cites *In re East Shoeshone Hospital District* in support. As discussed previously in this Order, the Court finds it appropriate to allow

---

[7] The Court notes that the Settlement Agreement states RHS will withdraw its objection to the Substitution Motion without prejudice upon execution of the Settlement Agreement. The Settlement Agreement has been executed, and no withdrawal of the objection without prejudice has been filed.

the proposed modification and finds *In re East Shoeshone Hospital District* distinguishable. Therefore, this objection is overruled.

### III. Settlement Application

#### A. 11 U.S.C. § 904

Under chapter 9 of the Bankruptcy Code, Debtor may not have been required to seek approval of the settlement with RHS because of the limitations imposed on the Court under 11 U.S.C. § 904.[8] *See In re City of Stockton, Cal.*, 486 B.R. 194, 199 (Bankr. E.D. Cal. 2013) ("When a chapter 9 debtor files a Rule 9019 motion to have the court approve a compromise or settlement, the municipality 'consents' for purposes of § 904 to judicial interference with the property or revenues of the debtor needed to accomplish the proposed transaction."). Assuming without deciding that it was necessary for Debtor to seek approval of the settlement, the Court will rule on the motion before it.

#### B. Legal Standard

Federal Rule of Bankruptcy Procedure 9019(a) allows a Debtor to settle a matter with the approval of the Court after notice and a hearing. When approving a settlement, a bankruptcy court generally considers the following four factors: "the probabilities of success in litigation; the difficulties, if any, to be encountered in the matter of collection; the complexity of the litigation involved (including the expense, inconvenience and delay necessarily attending the litigation); and the paramount interest of the creditors and a proper deference to their reasonable views." *In re Derivium Capital, LLC*, 380 B.R. 392, 405 (Bankr. D.S.C. 2007) (collecting cases). "'A

---

[8] 11 U.S.C. § 904 provides:
Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with --
(1) any of the political or governmental powers of the debtor;
(2) any of the property or revenues of the debtor; or
(3) the debtor's use or enjoyment of any income-producing property.

13

Court may approve a settlement over objections unless the proposed settlement falls below the lowest point in the range of reasonableness.'" *In re Jaraki*, No. 04-09182-W, 2006 WL 2612198, at *3 (Bankr. D.S.C. Jan. 20, 2006) (internal quotation marks omitted) (quoting *United States ex. rel. Rahman v. Oncology Assoc., P.C.*, 269 B.R. 139, 149 (D. Md. 2001)); *see also In re W.T. Grant Co.*, 699 F.2d 599, 608, 613 (2d Cir. 1983); *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995). "The essential inquiry that the Court must make . . . is to determine whether the settlement agreement is 'fair and equitable' and in the best interests of the estate." *Derivium Capital*, 380 B.R. at 405 (quoting *Oncology Assoc.*, 269 B.R. at 150); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985).

### C. Analysis

Applying the factors described above, the Court finds that approval of the Settlement Agreement is in the best interest of Debtor's estate. While Debtor may ultimately prevail in its dispute with RHS, the outcome is uncertain. Furthermore, the matters raised in the dispute involve a myriad of factual issues that would require multiple depositions, lengthy written discovery, engagement of experts, and possibly a lengthy trial. The Settlement Agreement also resolves the objection of RHS to the Substitution Motion, which facilitates Debtor's ability to consummate the closing of the New APA in the near term. Without implementation of the Plan through the closing of the New APA, Debtor may have to cease operations and suspend or dramatically reduce the scope of healthcare services it offers. For these reasons, the Settlement Application is approved.

*1. The Alexander Objection*

Alexander's objection to the Settlement Agreement has been addressed previously in this Order and is overruled. The overruling of his objection does not impact his rights in connection with the appeal of the Confirmation Order or interfere with the District Court's resolution of the issue on appeal.

*2. The GE Objection*

GE objected to the Settlement Application on the grounds that RHS has not shown it is entitled to an administrative priority under 11 U.S.C. § 503. The Court is not issuing a finding regarding whether or not RHS is entitled to an administrative priority with respect to the settlement funds or the claims those funds are being used to settle. *See* 11 U.S.C. § 904. Therefore, GE's objection is overruled as moot.

*3. The Objection of the Estate of Robert M. Peeples and Six Participants of the Barnwell County Pension Plan*

In their objection to the proposed settlement, the Estate of Robert M. Peeples and six participants of the Barnwell County Pension Plan question the propriety and wisdom of Debtor's proposed settlement with RHS. The Court has carefully considered these objections but finds they do not alter its conclusion that the settlement agreement is fair and equitable and in the best interest of the bankruptcy estate. The settlement does not fall below the lowest point in the range of reasonableness. Therefore, the objection is overruled.

**CONCLUSION**

For the reasons set forth herein, Debtor's Motion for an Order Authorizing a Substitute Asset Purchase Agreement in Aid of Implementation of the Plan is granted. The objections of Don Alexander and the Estate of Robert M. Peeples and six participants of the Barnwell County Pension Plan are overruled. With respect to the objection of the United States Department of

Health and Human Services, the Court hereby orders that to the extent Debtor assumes and assigns its Medicare provider agreements to BCH Acquisitions Group, such assumption and assignment shall be fully consistent with and subject to applicable laws and regulations governing Medicare provider agreements.

Additionally, the objections to the Notice and Application for Settlement and Compromise seeking approval of a Settlement Agreement and Release between Debtor and RHS are overruled, and the Settlement Agreement is approved.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**04/18/2013**



Entered: 04/18/2013

David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina